IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREEDOM OF THE PRESS FOUNDATION,<br>49 Flatbush Avenue #1017<br>Brooklyn, NY 11217<br>        *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Ave. NW<br>Washington, D.C. 20530<br>        *Defendant*. | Case No: 25-cv-2432 |

## COMPLAINT

1. Plaintiff Freedom of the Press Foundation brings this action under the Freedom of Information Act to compel the release of a U.S. Department of Justice memorandum endorsing the Trump Administration's acceptance of a $400 million Qatari jet for President Trump's use.[1]

2. The acceptance of the Qatari aircraft by the Trump Administration in May 2025 sparked significant legal and ethical questions, with one ethics expert referring to the transfer of the multimillion luxury jet as an "illegal, unconstitutional payoff from a foreign government to the president at a scale we actually have never seen."[2]

---

[1] Specifically, the Plaintiff brings this action under the Freedom of Information Act, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel the U.S. Department of Justice to comply with the requirements of FOIA.

[2] Geoff Bennett & Ian Couzens, *Qatar Gifting Trump $400M Luxury Jet Raises Ethical and Legal Concerns*, PBS NewsHour (May 12, 2025, 6:40 PM), https://www.pbs.org/newshour/show/qatar-gifting-trump-400m-luxury-jet-raises-ethical-and-legal-concerns.

1

3.      Despite the "substantial ethical and legal questions" raised by Qatar's offer of this extravagant "gift,"[3] Attorney General Pam Bondi—who previously lobbied on behalf of the Qatari government[4]—reportedly concluded in the memorandum Plaintiff seeks that it was "legally permissible" for the Trump Administration to accept the luxury jet.[5]

4.      A number of stakeholders, including ethics experts and several GOP lawmakers, have questioned the propriety and legality of the move, including whether acceptance of the plane would violate the U.S. Constitution's Foreign Emoluments Clause, U.S. Const. art. I, § 9, cl. 8, which prohibits a president from receiving gifts or benefits from foreign governments without the consent of Congress.[6]

5.      Moreover, the details surrounding the transaction have remained murky. Although President Trump touted the Administration's pending acceptance of the jet as "a very public and transparent transaction,"[7] the scant available details surrounding the "gift" were quickly called into question.[8]

6.      For example, although the Administration claimed that Qatar had approached the U.S. to offer the $400 million gift, multiple sources indicated that it was the other way around: the

---

[3] Morgan Rimmer et al., *Some GOP Senators Express Misgivings Over Trump Plan to Accept Qatari Jet*, CNN (May 13, 2025, 5:22 AM**),** https://www.cnn.com/2025/05/12/politics/gop-senators-trump-plane-qatar.
[4] Hannah Rabinowitz, *DOJ Lawyers Cleared Pam Bondi's Memo Backing the Legality of Trump Accepting Qatari 747*, CNN (May 14, 2025, 12:49 PM), https://www.cnn.com/2025/05/14/politics/bondi-justice-department-trump-qatar-747.
[5] Ivan Pereira, *Legality of Trump Potentially Accepting Gift of Qatari Plane Questionable: Experts*, ABC News (May 15, 2025, 5:20 AM), https://abcnews.go.com/Politics/legality-trump-potentially-accepting-gift-qatari-plane-questionable/story?id=121801837.
[6] *See* Rimmer, *supra* note 3.
[7] @realDonaldTrump, TruthSocial (May 11, 2025, 8:42 PM), https://truthsocial.com/@realDonaldTrump/posts/114492082555622686.
[8] *See, e.g.*, Alex Marquardt et al., *Sources Contradict Trump Narrative About Qatar Offering Plane as 'Gift,'* CNN (May 19, 2025, 7:45 PM), https://www.cnn.com/2025/05/19/politics/trump-adminstration-approached-qatar-jet.

Trump Administration had initiated the discussion when President Trump became frustrated with an expected two-year wait for Boeing to replace the current presidential planes.[9] Notably, President Trump's announcement of the "gift" arrived on the heels of reporting that the Trump company had struck a deal to build a luxury golf resort in Qatar.[10]

7. Further, although President Trump characterized the deal as a smart business decision, remarking that it would be "stupid" not to accept "a free, very expensive airplane,"[11] experts have noted that it will be costly to retrofit the jet for use as Air Force One, with estimates ranging from less than $400 million to more than $1 billion.[12]

8. Additionally, the announcement that the plane will ultimately be donated to President Trump's private presidential library foundation after his presidency threatens to "expand a known problem with library foundations"—specifically, that donors can curry favor with a sitting President by funneling money or property to a largely unregulated private foundation—"into a crisis."[13] The Qatari jet is just one in a list of current and prospective extravagant donations to

---

[9] *See id.*

[10] *See* Bernard Condon, *Trump Company Strikes Qatari Golf Resort Deal in a Sign It's Not Holding Back from Foreign Business*, Associated Press (Apr. 30, 2025, 11:27 PM), https://apnews.com/article/trump-qatar-deal-conflicts-saudi-arabia-emoluments-7379bee2e307d39bd43b534a05ae3207 ("In addition to a Saudi Arabian partner, called Dar Global, the planned resort north of the Qatari capital of Doha will be developed by a Qatari company called Qatari Diar, which is owned by the Qatari government. That would appear to violate the Trump Organization's much weaker, second-term ethics pledge that, while it would pursue foreign deals, none would include foreign governments.").

[11] Marquardt, *supra* note 8.

[12] Audrey Decker, *Air Force Says Qatar Jet Retrofit Will Cost Less Than $400M*, Def. One (June 5, 2025), https://www.defenseone.com/business/2025/06/air-force-says-qatar-jet-retrofit-will-cost-less-400m/405858/.

[13] Jacob T. Levy, *Qatar's Gift to Trump Reveals a Loophole Big Enough to Fly a Jumbo Jet Through*, Wash. Post (May 11, 2025), https://www.washingtonpost.com/opinions/2025/05/11/qatar-jumbo-jet-gift-loophole/; *see also* Dan Friedman, *The Qatari 747 Is Just the Latest Mega-Donation Flowing to Trump's 'Library*,' Mother Jones (May 16, 2025), https://www.motherjones.com/politics/2025/05/trump-qatar-747-airplane-library-emolument/.

President Trump's presidential library foundation that has raised significant questions about the use of private foundation donations to improperly influence government policy—notably, ABC News and Paramount each agreed to resolve cases President Trump filed against the media entities by paying multimillion dollar settlements to the Trump presidential library foundation, with Paramount's $16 million agreed payout coming at the same time it sought government approval for a planned merger with Skydance.[14] On July 24, the Federal Communications Commission announced its approval of the $8 billion merger.[15]

9.  The Trump Administration formally accepted the jet on May 21, 2025,[16] bolstered by Attorney General Bondi's memorandum reportedly finding no legal impediment to the Administration's acceptance of the jet.[17]

10. Attorney General Bondi's decision not to recuse herself from this matter, despite her links to the Qatari government, adds to a growing body of questionable ethical practices that have arisen during her short tenure as Attorney General.

---

[14] *See* Lauren Harper, *Building Presidential Libraries Shouldn't Be a Ruse for Funneling Bribes*, Freedom of the Press Found. (July 17, 2025), https://freedom.press/the-classifieds/building-presidential-libraries-shouldnt-be-a-ruse-for-funneling-bribes; *see also Stephen Colbert on Paramount's $16m Settlement with Trump: 'Big Fat Bribe,'* The Guardian (July 15, 2025, 11:01 AM), https://www.theguardian.com/culture/2025/jul/15/late-night-roundup-colbert-stewart-meyers-trump-paramount-epstein. Just days after Colbert's commentary and while approval of the prospective merger was pending, Paramount announced it would end "The Late Show with Stephen Colbert" in May 2026. *See* Rick Porter, *'Late Show' Shocker: CBS Ending Late-Night Franchise in 2026*, Hollywood Reporter (July 17, 2025, 4:29 PM), https://www.hollywoodreporter.com/tv/tv-news/cbs-ending-late-show-stephen-colbert-2026-1236319194/.

[15] Jeremy Barr, *FCC Approves $8 Billion Paramount-Skydance Merger After Lengthy Review*, Wash. Post (July 24, 2025, 8:41 PM), https://www.washingtonpost.com/business/2025/07/24/fcc-approves-8-billion-paramount-skydance-merger-after-lengthy-review.

[16] Kat Lonsdorf, *Trump Administration Officially Accepts Jet from Qatar for Use as Air Force One*, NPR (May 21, 2025, 4:40 PM), https://www.npr.org/2025/05/21/nx-s1-5406420/trump-accepts-qatar-plane-air-force-one.

[17] *See* Rabinowitz, *supra* note 4.

4

11. For example, despite Attorney General Bondi's promise during her confirmation hearings to consult ethics officials in the discharge of her duties, she recently terminated DOJ's ethics director, a veteran employee, reportedly with no notice, creating a "dangerous vacuum in ethics expertise at a time when the Department and its officials face unprecedented ethical challenges,"[18] including the firing of approximately thirty-five DOJ employees linked to previous investigations into President Trump.[19]

12. Attorney General Bondi has also faced critique for her handling of Justice Department files from the Jeffrey Epstein investigation. Despite Bondi's previous public statements and promises of transparency on the matter, a two-page DOJ memo stated that no further documents from the investigation would be released, sparking outrage among Trump supporters and feeding into growing conspiracy theories.[20]

13. Particularly against this backdrop, Attorney General Bondi's memorandum—which cleared the way for the Trump Administration to accept an unprecedented gift from a foreign government—should be made public to answer lingering questions about the Administration's justifications for entering into this legally and ethically questionable arrangement.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

---

[18] Ben Penn, *Schiff Urges Bondi to Explain 'Egregious' Firing of Ethics Chief*, Bloomberg Law (July 16, 2025, 12:30 PM), https://news.bloomberglaw.com/us-law-week/schiff-urges-bondi-to-explain-egregious-firing-of-ethics-chief.

[19] Dan Gooding & Gabe Whisnant, *DOJ's Ex-Ethics Lawyer Speaks Out After Being Fired by Pam Bondi*, Newsweek (July 16, 2025, 11:04 AM), https://www.newsweek.com/pam-bondi-attorney-general-justice-department-donald-trump-2098804.

[20] Ryan Lucas, *Attorney General Bondi Brushes Aside Questions About Her Handling of Epstein Files*, NPR (July 15, 2025, 9:27 PM), https://www.npr.org/2025/07/15/g-s1-77698/pam-bondi-jeffrey-epstein-justice-department.

15. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

16. Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, Freedom of the Press Foundation is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendant from continuing to withhold department or agency records and ordering the production of department or agency records improperly withheld.

## PARTIES

17. Freedom of the Press Foundation (FPF) is a national non-profit section 501(c)(3) organization dedicated to press freedom, government accountability, and the public's right to know. FPF regularly submits FOIA requests to gather information to educate the public about matters key to its mission, including government corruption and secrecy. The organization is incorporated under the laws of California.

18. Defendant U.S. Department of Justice (DOJ) is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).

19. DOJ has possession, custody, and control of records that FPF seeks.

## STATEMENT OF FACTS

20. On May 15, 2025, FPF submitted a FOIA request to DOJ seeking a copy of a May 2025 memorandum sent by Attorney General Bondi to the White House Counsel's Office concluding that the Trump Administration's acceptance of a $400 million dollar plane from Qatar is "legally permissible."

21. FPF sought expedited processing for the request.

22.     On May 16, 2025, DOJ acknowledged the request, assigned it the internal tracking number FOIA-2025-04409, and granted FPF's request for expedited processing.

23.     On June 12, 2025, FPF, having received no additional update from DOJ, followed up via email requesting a timeline for completion of processing FPF's request.

24.     On June 16, 2025, DOJ responded, stating:

> Please be advised that the search for your request is ongoing and accordingly we have limited information with which to provide an estimated date of completion. Until we have completed our search and know what processing must be done (such as consultations with other offices whose information might exist in any material we find), the best estimate I can provide is the average processing time for requests in this Office's expedited track which is 620 days as published in DOJ's Fiscal Year 2024 annual report. 620 days from when your request was received in this Office on May 15, 2025 would be January 25, 2027. Please remember that this is an estimate based on limited information and accordingly subject to variation.

25.     As of the date of this Complaint, FPF has received no further communications from DOJ concerning this request.

*Exhaustion of Administrative Remedies*

26.     As of the date of this Complaint, Defendant has failed to: (a) notify FPF of a final determination regarding its FOIA request, including the scope of responsive records Defendant intends to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

27.     Through Defendant's failure to respond to FPF's FOIA request within the time period required by law, FPF has constructively exhausted its administrative remedies and seeks immediate judicial review.

## COUNT I
### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records

28. FPF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

29. FPF properly requested records within the possession, custody, and control of Defendant.

30. Defendant has failed to promptly review agency records for the purpose of locating those records that are responsive to FPF's FOIA request.

31. Defendant's failure to conduct an adequate search for responsive records violates FOIA and applicable regulations.

32. Plaintiff FPF is therefore entitled to injunctive and declaratory relief requiring Defendant to promptly make reasonable efforts to search for records responsive to FPF's FOIA request.

## COUNT II
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

33. FPF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

34. FPF properly requested records within the possession, custody, and control of Defendant.

35. Defendant is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days.

36. Defendant is wrongfully withholding non-exempt agency records requested by FPF by failing to produce non-exempt records responsive to its FOIA request.

37. Defendant is wrongfully withholding non-exempt agency records requested by FPF by failing to segregate exempt information in otherwise non-exempt records responsive to FPF's FOIA request.

38. Defendant's failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

39. Plaintiff FPF is therefore entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to its FOIA request and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## REQUESTED RELIEF

WHEREFORE, FPF respectfully requests the Court to:

(1) Order Defendant to conduct a search reasonably calculated to uncover all records responsive to FPF's FOIA request submitted to DOJ on May 15, 2025;

(2) Order Defendant to promptly produce any and all non-exempt records responsive to Freedom of the Press Foundation's FOIA request and *Vaughn* indexes of any responsive records withheld under claim of exemption;

(3) Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Freedom of the Press Foundation's FOIA requests;

(4) Award FPF the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant FPF such other relief as the Court deems just and proper.

Dated: July 28, 2025

Respectfully submitted,

*/s/ Loree Stark*
LOREE STARK
D.C. Bar No. 90021926
JESSICA JENSEN
D.C. Bar No.  1048305
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5246
loree.stark@americanoversight.org

*Counsel for Plaintiff Freedom of the Press Foundation*